Lisa Stott
3268 East Thompson Street
Philadelphia, PA
Cell Phone: 267-549-4908
LisaStott@comcast.net

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

JESSICA CARSON,

Plaintiff,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION (AMTRAK), et al.,

Defendant.

Civil Action No. _____

**DECLARATION OF LISA STOTT IN SUPPORT OF COMPLAINT AND MOTION FOR
PRELIMINARY INJUNCTION AND EXPEDITED RELIEF**

**Exhibit L1**- Contemporaneous Notes Amtrak Legal Dept. (page 5-8)

**Exhibit L2-** Teams Chat -Insubordination (pages 9-10)

**Exhibit L3**- Near miss Report (pages 11-14)

**Exhibit L4**-Harassment and Retaliation Email Chain (pages 15 -19)

**Exhibit L5**- Record Deletion Email Chain (pages 20-22)

**Exhibit L6**- Lisa OSHA Whistleblower Report (pages 23-26)

**Exhibit L7**- Contemporaneous Notes Safety All Hands (pages 27-29)

**Exhibit L8-** Follow Up From HR Meeting (pages 30-32)

1

I, Lisa Stott, declare as follows:

1. Identity and background. My name is Lisa Stott. I am over 18 years old and competent to make this declaration. I have personal knowledge of the facts stated in this declaration, and if called to testify, I could and would testify truthfully.

2. Employment role. I was employed by the National Railroad Passenger Corporation ("Amtrak") as a Senior Occupational Health Nurse (or [insert exact title]) in or around [City/Location], during the time-period relevant to the events described in the attached exhibits.

3. Purpose of this declaration. I submit this declaration to (a) authenticate the attached documents as true and correct copies of records I created or received in the ordinary course of my work, and (b) confirm that I provided these documents directly to Plaintiff Jessica Carson for use in her federal court filings.

4. Protected reporting and safety/compliance concerns. During my employment, I raised concerns and/or submitted reports regarding safety, compliance, and/or process integrity issues within Amtrak Medical Services, including concerns involving records completeness, documentation practices, and workplace conduct and retaliation concerns. The attached exhibits reflect those reports and communications.

5. Exhibit authentication – Contemporaneous Notes Amtrak Legal Dept as Exhibit L-1 is a true and correct copy of contemporaneous notes that I documented regarding my interaction with the Amtrak Legal Department, dated 4/22/2025.

6. Exhibit authentication – Teams Chat -Insubordination Attached as Exhibit L-2 is a true and correct copy of a Teams Chat I had with Amy Milhorn on 5/31/2024.

7. Exhibit authentication –Near Miss Report. Attached as Exhibit L-3 is a true and correct copy of a screenshot reflecting the actual near miss report I submitted in the Amtrak Voluntary Reporting System on 3/6/2025.

8. Exhibit authentication – Harassment and Retaliation Email Chain. Attached as Exhibit L-4 is a true and correct copy of an email chain between myself, HR, and Employee Relations on March 9, 2025.

9. Exhibit authentication – Record Deletion Email Chain. Attached as Exhibit L-5 is a true and correct copy of an email I sent to Amtrak Legal Dept. and HR Investigations on 7/17/2025.

10. Exhibit authentication – Lisa OSHA Whistleblower Report. Attached as Exhibit L-6 is a true and correct copy of an email I sent to OSHA investigator on 7/15/2025.

11. Exhibit authentication – Contemporaneous Notes Safety All Hands. Attached as Exhibit L-7 is a true and correct copy of contemporaneous notes I created regarding the Safety and Security Dept. All Hands Meeting led by Steven Predmore and Beth Termini from 6/5/2025.

12. Exhibit authentication- Follow Up From HR Meeting. Attached as Exhibit L8 is a true and correct copy of an email I sent to HR on March 27, 2025 after a meeting with HR and Medical Services Staff.

13. Consent and limited purpose. I consent to Jessica Carson's use and filing of these exhibits in her case against Amtrak for the limited purpose of demonstrating corroboration of safety reporting, compliance concerns, workplace retaliation patterns, and/or the context of the issues she reported.

14. Redactions. To the extent any exhibit contains personal identifiers, employee medical information, phone numbers, or other sensitive information, I understand Jessica Carson may redact such information prior to filing to comply with court privacy requirements.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____

Lisa Stott
3268 East Thompson Street
Philadelphia, PA
Cell Phone: 267-549-4908
LisaStott@comcast.net

3

12. Exhibit authentication- Follow Up From HR Meeting. Attached as Exhibit L8 is a true and correct copy of an email I sent to HR on March 27, 2025 after a meeting with HR and Medical Services Staff.

13. Consent and limited purpose. I consent to Jessica Carson's use and filing of these exhibits in her case against Amtrak for the limited purpose of demonstrating corroboration of safety reporting, compliance concerns, workplace retaliation patterns, and/or the content of the issues she reported.

14. Redactions. To the extent any exhibit contains personal identifiers, employee medical information, phone numbers, or other sensitive information, I understand Jessica Carson may redact such information prior to filing to comply with court privacy requirements.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 12/25/2025

Lisa Stott
3268 East Thompson Street
Philadelphia, PA
Cell Phone: 267-549-4908
LisaStott@comcast.net

3

# Exhibit L1

**4/22/25- Notes On Interview with Amtrak Legal Department**

**Attendance:** Lisa Stott BSN, RN- Medical Services, Joann Norman Amtrak Sr Compliance Manager- Legal Department

**Context of the Meeting:**

I submitted a near miss regarding legal records pulls, specifically that nurses' notes were not being included for discovery.

After I followed up with Marcus because no one had contacted me about my near miss reports, Marcus reached out to Employee Relations, which had apparently already escalated the issue to Legal and assigned it to a specific attorney. Legal and HR contacted me the same day Marcus reached out.

The attorney who met with me had reportedly only been with Amtrak for about a year and previously worked for the DOT.

**Attorney's Reactions & Questions:**

1.The attorney's demeanor:

Became visibly shaken during the meeting.

Developed splotchy red patches, dilated pupils, and was very pale.

Reacted with disbelief, shock as I shared critical details.

Got very close to the camera, with intense focus and alarm.

2. Questions the attorney asked Me:

About the medical charting systems—specifically what parts of the record do and do not lock.

Asked why regulatory exam results can be edited. Asked if engineers could be driving trains on methadone without Amtrak ever knowing.

Asked about random drug testing and the process by which MRO clears positive results as "negative" if the employee has a prescription.

Asked whether Amtrak actually catches any of this or relies on the honor system.

6

Wanted clarification on the HIPAA applicability and who determined what is or isn't protected health information.

### 3. My responses to Legal:

I confirmed that nurses' notes are not locked and can be edited by anyone with access to FileMaker Pro, unless they're in specific sections. Explained that Amy and Ann were informed multiple times about the lack of security in the charting system that can cause us to make inaccurate fitness for duty decisions that put employee safety at risk and put our RN licenses at risk of anyone editing our legal documentation about fitness for duty that could be used against us if employees were injured or killed, for many years to come, even after we no longer work there. There would be no way to defend ourselves.

Shared that HIPAA was being selectively applied, and Dr. Kuhnen told staff HIPAA didn't apply to certain documentation because "insurance wasn't involved."

Told the attorney that there was no encryption for medical records in SharePoint and that outside vendors received unencrypted documents. Told her that medical exam notes can be edited post-submission, and that clinical summaries are used in legal discovery pulls—not full records.

Informed the attorney that I did not report the restricted medications and engineers able to drive on methadone issues, that Jessica Carson had and it would be best if she talk to her about that.

Joanne asked me to explain it to her anyway.

Clarified that the methadone situation could absolutely go undetected due to policy structure and the restricted medication policy, and the lack of coordination between departments and programs.

### 4. The attorney's key reactions:

Swore audibly and expressed shock after hearing about the methadone issue: "Are you kidding me? We may have conductors and engineers out there driving on methadone and we may never know?"

Visibly upset when I explained that Ann and Amy were told these problems existed—and did nothing. Went ghost white, realized the implications, and asked if this had been brought up before.

Appeared completely unaware that the record production process was omitting clinical documentation or that editable records were being used in potential litigation.

### 5. Other Details:

I stated that I had reported a coordinator documenting regulatory exams under my name, and Dr. Ann Kunen and Amy Milhorn- Sr Manager Medical Services were told repeatedly. I said no one had ever responded to me about investigating the near miss reports I made until now, likely due to Marcus prompting Employee Relations for a status.

The attorney told me that they had considered forwarding her complaint to the OIG but decided to handle it internally.

8

# Exhibit L2



Milhorn, Amy B  11:33 AM

its in his SP, but it will be misleading, if it is in FMP. I would think that would be clear. Someone would see it say oh he had DOT order another in two years possibly and he could have one for personal use

11:33 AM

if he is MDQ, then he can remain out indef



Milhorn, Amy B  11:33 AM

we arent deleting the physical which is in SP at least until they fix it, when we get the updated exam, it should be removed with the correct paperwork

11:33 AM

> Milhorn, Amy B  5/31/2024 11:33 AM
> its in his SP, but it will be misleading, if it is in FMP, I would think that would be clear. Someone would see it say oh he had DOT order...

I will note in FMP it was in error, but I personally still think it should be recorded, in my opinion



Milhorn, Amy B  11:34 AM

I dont appreciate the argument here honestly

11:35 AM

Arguing? I'm stating my professional opinion. Things can be deleted in SP at any time by anyone. It is a, while error, exam, it is still owned information by Amtrak.

Milhorn, Amy B  11:47 AM

Lisa, this is teetering on insubordination so I am not going to discussr this point,. the exam is incomplete. He is NOT a dot, a DOT in FMP will be misleading, The complete exam from CHS will prove this. Ann agrees with me. I have not asked you to remove from CAS but once the complete correct exam comes, it should be. I am sure you dont know how many exams start

Arguing? I'm stating my professional opinion. Things can be deleted in SP at still owned information by Amtrak.

Milhorn, Amy B  11:47 AM



Lisa, this is teetering on insubordination so I am not going to discussr this point,. the exam is DOT in FMP will be misleading, The complete exam from CHS will prove this. Ann agrees wit remove from CAS but once the complete correct exam comes, it should be. I am sure you do

10

# Exhibit L3

**Events**

## Description

| | |
|---|---|
| Type | <span style="background-color:red;color:white">Near Miss</span> |
| Event Title | Failure to Provide Nursing Notes to Legal Department in Legal Case Records Requests |

| | |
|---|---|
| ID | 58777 |

## Location

| | |
|---|---|
| Where did this Occur? | Manual Entry |
| Nearest Amtrak Location | Philadelphia PA (PHL) |
| Incident City Code | PHILADELPHIA - 6540 - PHILADELPHIA - 101 |
| Incident State Code | Pennsylvania - PA |
| Incident Country Code | United States of America - U005 |
| Line | |
| Mile Post (Nearest tenth) | |
| FRA Grade Crossing | |
| Specific Area | 30th Street Station, Medical Services |

## Event Time

| | |
|---|---|
| Date of Incident | 03/06/25 04:00 pm |
| Date the Incident was Reported | 03/07/25 08:32 am |
| Lag Time | 0 Day(s) |
| Initial Reporter Lag Time | 0 Day(s) |

| | |
|---|---|
| Date of Resolution | |

## Details

| | |
|---|---|
| Event ID | PHL.OTH.030625.00058777 |
| Method of Entry | Direct Entry |
| Classification | Other |
| Sub-Classification | Near Miss |
| Confidentiality | Classified |
| Priority | High |
| Actual Severity | <span style="background-color:red;color:white">High</span> |
| High Learning Value Event | ✗ |
| Supervisor Notified? | No |
| Risk Review | No |
| Short Description of Event | During a routine review of legal case record requests, it was identified that nursing notes (entered in FMP Medical File Encounters section) are not included in the documentation provided to the Legal Department, despite their explicit requests for any/all relevant medical records. The omission could compromise legal case accuracy, hinder defense strategies, and result in potential compliance violations with legal and regulatory requirements. |

The failure to provide complete records presents significant risks:

- Legal liability: Incomplete records could lead to legal exposure, misrepresentation of medical evaluations, missing critical information relevant to a case defense.
- Regulatory Compliance Risk: Failure to provide complete and accurate medical documentation could result in non-compliance with HIPAA, OSHA, and other applicable regulatory requirements.
- Operational Safety: The Legal Department may need to re-request missing records, delaying case progress and increasing administrative workload.
- Potential Harm to Employee and Company: Inaccurate or incomplete medical records may impact case outcomes, settlements, or judgements against the company.

**Root Cause Analysis**

The issue appears to be a process gap in record retrieval and submission, potentially due to:

1. Lack of clarity of what constitutes "complete medical records".
2. No standardized protocol ensuring nursing/encounter notes are included in legal record submissions.
3. Failure to cross-check documents before submission.
4. Ineffective communication between departments (Occupational Health and Legal).

**Corrective Actions Recommended**

Immediate Implementation of a Nursing (FMP Encounter) Notes Inclusion Checklist

1. o Before submitting any records to Legal, a designated reviewer (e.g., a lead nurse or case manager) must ensure nursing notes are included as part of a standard record review.
2. Policy Update & Standardization Process for Legal Requests:
   o Revise existing procedures to clearly mandate that all FMP encounter notes be included in responses to legal record requests.
   o Define clear accountability (e.g., who is responsible for pulling and reviewing records before submission).
3. Interdepartmental Coordination Between Occupational Health and Legal:
   o Establish a formal communication process (e.g., a checklist or shared document tracking record requests) to confirm completeness before submission.
   o Consider quarterly audits to ensure compliance with record submission requirements.
4. Training and Awareness for Occupational Health Team:
   o Provide training to all staff responsible for record management on legal compliance and the importance of completeness in documentation requests.

**Potential Impact if Not Addressed**

If this issue is not addressed, there is a high risk of legal and financial consequences, including:

- Increased legal risk due to incomplete documentation in cases.
- Potential regulatory fines or penalties for non-compliance.
- Loss of credibility and trust between Occupational Health and the Legal Department.

**This near miss highlights an urgent need for process improvement to ensure full compliance and mitigate legal risk.**

During my time here in Medical Services, I have asked for clarification of who is responsible for pulling the FMP Encounter Notes for legal requests. The notes provide any/all communications with employees, managers, referrals, updates, and advisement from the Medical Director. These are our legal nursing notes and are a record of the work that the nurses have done to ensure that the employees are medically safe to RTW, etc.

I have received conflicting responses. Dr. Kuhnen advised that we do not pull these encounter notes and have no way to do so anyway. Amy Milhorn advised the same up until just recently when she stated she was told by Nikisha Banks that WFA gets a request from legal and pulls. Nikisha no longer works for Amtrak so I am unable to confirm that. I did, however, reach out to John Allen about this issue and he responded that only Medical Services receives legal requests. (See attachments).

Beyond that, there are concerns about our entries into FMP for both employee physicals and preplacement physicals. These entries do not lock and are subject to anyone, at anytime, editing/revising, without anyone's awareness. This is concerning in that the nurses enter the physical results as received then may go in at a later date to enter that information into SPARTN. We would be unaware if there were any changes to the results we entered, and could potentially allow someone who is not medically cleared to mark up.

It was only up until about a year ago that the Encounters (notes) section in FMP was able to be locked and not edited or deleted. There are 3 RN's, besides Amy Milhorn, that work in Medical Services and our nursing license is put in jeopardy whenever there is an ability to potentially change any information we have entered. Not to mention the risk to the department and Amtrak as a whole.

Nurses notes are legally binding and are a documentation of exactly what the nurse had done/provided/communicated, etc. with the employee, managers, or other departments. In theory, a nurses notes should be able to stand up in a court of law and be sufficient enough that they stand on their own.

Lastly, our Medical Services SharePoint, where we store exams, doctors notes, important emails to employees/managers and referrals, does not lock down either. Anyone at anytime in Medical Services, can delete any record stored in the file, and no one would be alerted or aware it was gone. This puts the nurses, the department and Amtrak at risk for not having supporting documentation when/if needed.

I am happy to answer any questions/concerns and can provide additional supporting documentation if needed.

Thank you.
Lisa Stott, BSN, RN

Any Suggested Corrective Actions/Additional Comments

Comments

Attachments

**Organizational Location**

Responsible Department: Safety & Security

Departments: EHS Environmental Management

**Additional Information**

Approval Date

Approval Level: Safety Analyst Review

Event Person Responsible: <None>

Under Investigation ✖

Additional Information Log

**Additional Information- Voluntary Reporting**

Event Auditor: <None>

## Evidence

| Location/Worksite | Related Evidence Impact | Evidence | Date | Document | Signature Date |
|---|---|---|---|---|---|
| Philadelphia PA (PHL) | | TBD-20250306-E22639-Other-1 | 03/07/25 | 📄 Internal Request for Med Records.pdf | 03/07/25 11:24 am |
| Philadelphia PA (PHL) | | TBD-20250306-E22640-Other-2 | 03/07/25 | 📄 Internal Request for Med Records.pdf | 03/07/25 11:26 am |
| Philadelphia PA (PHL) | | TBD-20250306-E22641-TBD-1 | 03/07/25 |  FMP Encounters legal question chat with John Allen.docx | 03/07/25 11:28 am |

## Action Plans

ℹ There are no results.

# Exhibit L4

| From: | Stott, Lisa |
| --- | --- |
| To: | Carson, Jessica L |
| Subject: | FW: Harassment and Retaliation Issue |
| Date: | Monday, March 17, 2025 3:56:44 PM |
| Attachments: | image001.png |
| | RE Meeting today.msg |
| | Patterns.msg |
| | cancelled meeting wAnn and HR.msg |
| | Re Investigation Check In.msg |
| | 11 Follow Up.msg |
| | Events-03072025-2 Legal Requests Issue.pdf |

**From:** Stott, Lisa
**Sent:** Sunday, March 9, 2025 8:55 PM
**To:** Boetig, Adria J <​ ​>; Grasty, Robert E <​ ​m>
**Cc:** Stott, Lisa <​ ​>; LISA STOTT <​ ​>
**Subject:** Harassment and Retaliation Issue

To Whom It May Concern,

My name is Lisa Stott. I have been a Registered Nurse over 25 years with my last three working in Amtrak Medical Services. During my time here I have met all of my annual performance expectations and received merit awards for exceeding them. I have no write ups or performance issues on my record. I have been struggling with an unfair and concerning situation for the past month and a half. I am bringing this to HR and Employee Relations because I feel that I have not been treated with respect, dignity and professionalism. I believe it is an act of retaliation for speaking up and requesting that we define boundaries, standardize guidelines, hold each other accountable to treat all employees equally, fairly and with the respect and dignity we deserve.

Background on the department: The Medical Services Department falls under Safety and Security, EH&S and Beth Termini. Medical Services is comprised of Dr. Kuhnen (Director), Amy Milhorn (RN and Manager), three licensed Registered Nurses (myself included) and 4 Occupational Health Coordinators (non-licensed personnel). We are a small team that handles all RTWs, clearing pre-placement and periodic exams, ensures employees are able to meet all FRA medical requirements, refers to ADA, FMLA and EAP, and follows up on non-OJI medical emergencies to ensure that all employees are safe to return and/or work in their role. Without standardized medical guidelines for situations that are outside of the RN's legal scope of practice to make decisions, the RN's are required to defer to Dr. Kuhnen to advise on complex medical situations. This is the traditional "chain of command" in the healthcare world.

As RN's, we inherently trust that the medical doctor/director is making the most appropriate, safe, legal and ethical decision for us to follow through on. We legally have to document that we requested her advisement and note specifically what her plan, next steps or decision is to protect ourself in any potential litigation scenario. All nurses notes/entries should be locked,

un-editable and date/time stamped. We are trained that our notes should be able to stand alone if every called to a court of law. We live by the motto "Not charted, not done." As you can see, Dr. Kuhnen plays a significant role in our daily work responsibilities here at Amtrak. I preface this so you can understand how unsettling the situation I am about to explain is.

Situation History:

As a result of the unfavorable 2024 Employee Survey scores for the EH&S Department as a whole, Dr. Kuhnen, Amtrak Corporate Medical Director, has been holding skip level meetings, 1:1's, and team meetings to address issues such as psychological safety as part of the MS Engagement Plan.

On Jan. 22, 2025, a nurse posted a comment in the MS Teams chat that is visible to all MS staff regarding a coordinator making nursing judgements. This frequently occurs because Amy allows it and states that she has "medical experience" even though she is not a nurse. One of the coordinators, Appollonia McKee, noted it to be upsetting and went on to post a response that she felt 'targeted as someone not a nurse (and a person of color) but holds an MBA and law background'. (as an fyi, the initial post was not meant for her and there was no expectation that she would understand the background of the issue it concerned)

As a result of the interaction and in line with the request from Beth to support and encourage team engagement post survey, Dr. Kuhnen scheduled a "Psychological Safety Meeting" for all Medical Services team member to attend. That meeting was scheduled and held on Jan 27, 2025, via Teams as we have some 100% remote team members.

At the start of that call, Dr. Kuhnen allowed Appollonia to begin the meeting by sharing her thoughts/concerns. She was on camera and began by stating 'As a woman of color and having attended law school' then went on to talk about dropping out of law school to be a full time mom to her children. At that point, I did interrupt her and stated that "Color has no place in this conversation, it was not related to anything and that the posting was not meant for her as she did not know the background info to understand." I stated this as fact and in a non-threatening tone. post was.) Just as I finished stating that Dr. Kuhnen also reiterated that 'this is not related to color".

Appollonia immediately went off camera and did not come back on for the entire meeting. We continued the meeting and at close I requested that we have a follow up "reset" meeting to bring the team back to the basics of job responsibilities, additional projects, etc so we all have an understanding that all of our work is important. I also wanted to note there are times only nurses can do certain things, requiring clinical judgement and a license and it is not ok for coordinators to make those decisions because of the legality. The lines between licensed/non-licensed required responsibilities are blurry and it causes discontent when nurses bring it up.

On 1/29/25 I received a message from Amy via teams about an unconfirmed, yet believed

allegation she received from another coordinator about me. I requested Amy call me as I wanted to tell my side of this situation. We spoke via Teams and I provided her with confirming evidence that the allegation made by that coordinator was false. She requested a copy of the proof and advised she would speak with that employee about it. Amy then went on to tell me that Appollonia McKee was now alleging that I made a discriminatory comment regarding a "border hopper" about a year ago, but she could not recall the exact conversation and environment it was said (teams chat, email or live meeting). She could not remember what the context of the conversation was but was very sure that I had said it. Amy stated she did not believe it was true but wanted me to know "in case this goes anywhere". She told me not to worry, she would let her friend Nikki (McCleaf, now Meisner) in HR know as she was our new HRBP now that Angela has promoted to Director. I told Amy I was not guilty of the accusation and it was clearly in retaliation after speaking up to her in the Psych Safety Meeting. She had absolutely no proof or confirmation. Amy advised me not to go to HR as they would "peel the onion back" in Medical Services and that would not be good. She also stated that she did not know why Appollonia was suddenly saying this now and that she has stated in the past concerns to Amy that she only has "white nurses". At this point I ceased all communication with Appollonia, unless in a public chat. I have never had any issues, concerns or disagreements with Appollonia in the entire 3 years we have worked together.

A few days later I received a Teams call from Dr. Kuhnen. She wanted to know if I would be willing to meet with her and Appollonia regarding this allegation. I agreed to the meeting but when Dr. Kuhnen asked me to 'hear Appollonia out' I told her I was not apologizing as I did not make that statement. Dr. Kuhnen then asked me if I would just state to Appollonia that "maybe it landed wrong". I again informed Dr. Kuhnen that I would not apologize and/or take accountability for making a statement that was not investigated, confirmed, corroborated, proven to be true. I advised that this could have serious effects on my personal and professional reputation, my license and ability to continue working as a nurse. It would need to be reported to the Board of Nursing. I also stated that The Amtrak Code of Conduct and the Amtrak Policy on Anti-Discrimination and Anti-Harassment provides me the ability to due process. At this point, they were taking Appollonia at her word, no investigation was conducted and I was already guilty in their view.

On 2/7/25 I received and accepted the meeting invite. After thinking more about it, I replied to Dr. Kuhnen that I would only attend the meeting if I had an HR Representative present as a 3rd person and impartial witness. I was not trusting that if I attended the meeting without HR I would be able to defend myself if a negative narrative came out of it. I copied Angela Adjekum. Shortly after I received an email back from Dr. Kuhnen cancelling the meeting and stating that "It is clear from your message that you did not understand the purpose of this meeting with Appollonia and Amy. I am not optimistic the meeting will be productive given your comments below." That reply felt punitive and belittled my concerns. (Amy had asked Dr. Kuhnen to be present as she is both mine and Appollonia's manager.) Angela replied that she would notify Nikki McCleaf as she was taking over as our HRBP. I suggested to Ann that all staff should review The Code of Ethics again.

18

On 2/10/25 Amy sent a copy of The Code for all MS staff to 'review and understand'. A meeting with Dr. Kuhnen, Amy, myself, Appollonia and Nikki Meisner was scheduled for 2/14/25.

On 2/13/24 I was contacted by Nikki by phone. She advised me that she the meeting on 2/14 was intended to be for mediation, however, after I informed her of all of the above information, she was cancelling the meeting and decided to pursue an investigation instead. I made it known to Nikki that Amy Milhorn had explicitly told me that Nikki is a good friend of hers and that I felt it would be a conflict of interest. I then sent Nikki several emails I retained as evidence that Dr. Kuhnen handled this matter unethically and without fairness and integrity. Anticipating my not guilty conclusion, I asked that Appollonia not receive any type of disciplinary action from this but to fully understand the gravity of making such an unfounded allegation and potential impacts to my career. I also wanted to acknowledge that Dr. Kuhnen, who just by taking the Hippocratic oath to become a doctor, should be held to the highest standards of ethical behavior in the company. What she was doing to me was not ethical, not professional, nor was it following Amtrak's Policy and Procedures to first report and investigate. I was not afforded due process.

After two additional grueling weeks I received a call from Nikki. She wanted to let me know that the delay was because they were waiting for DT to pull a chat from about a year ago and that the investigation was closed and the allegation was "unfounded". She stated that she hoped "healing could occur" and that we could move forward as a team. That's it.

The next day I emailed Nikki requesting a copy of the formal document of the allegation, investigation and the outcome, so I could have on record for myself. I have never received anything, everything was email or teams calls.

With no response, I emailed again asking for official documentation for my records and still have not received any to this day.

This was one of the worst situations I have ever been through. Mentally and emotionally. I have never had an allegation against me in over 25 years. This allegation was clearly incited as retaliation of Appollonia from the Psych Safety Meeting and supported by Amy and Dr. Kuhnen. Instead of them doing the right thing, they attempted to sweep it under the rug to appease Appollonia. I informed them that this way only gives Appollonia, as well as any other team member, permission to make any allegation at any time against any employee....and it will be believed. It has also eroded my trust in my leadership to do the right thing, one of Amtrak's Core Values. More importantly there is a pattern of management in MS trusting unconfirmed allegations and going after the intended recipient in an effort to publicly embarrass, humiliate and belittle you. I can provide documentation that this has been going on for quite some time and not just to me, it's happened to all the nurses in our department. Anytime we speak up and make suggestions, improvements or bring issues to light, we receive passive aggressive comments, reputation soiled to outside vendors and other Amtrak managers, and division

# Exhibit L5

**Fwd: FW: Duplicate PE entries**



**From** LISA STOTT <▮▮▮▮▮▮▮▮▮▮▮▮>
**Date** Thu 7/17/2025 12:28 PM
To ▮▮▮▮▮▮▮▮▮▮▮com <▮▮▮▮▮▮▮▮▮▮▮▮.com>

📎 3 attachments (254 KB)

Part_1.eml; Med Recordkeeping in Occ health setting.pdf; Part_3.eml;



---------- Original Message ----------
From: "Stott, Lisa" <Lisa.Stott@amtrak.com>
To: "Norman, Joanne M" <▮▮▮▮▮▮▮▮▮▮▮▮om>, "Barrows, Randal"
<▮▮▮▮▮▮▮▮▮▮▮>, "Schiavello, Angela D" <▮▮▮▮▮▮▮▮▮▮▮▮▮h>
Cc: "Stott, Lisa" <▮▮▮▮▮▮▮▮▮▮>
Date: 07/17/2025 1:26 PM EDT
Subject: FW: Duplicate PE entries

Good Morning,

Please see email below and attached. Here is **clear, absolute evidence** supporting the claims both I and Jessica Carson (terminated) have reported about Amy Milhorn working directly with John (Allen) Database Management & Reporting Mgr. Human Resources, and that THEY **have the ability to alter, delete, edit and/or change any of the information** that the Registered Nurses (specifically) are entering into FMP, which is our **only legal, official, documentation system** that we use in Medical Services. And without our knowledge or consent. Technically, we may never even know. There is no "notification" that a change was made to the person who initially made the entry.

The RN's document all RTW info, follow-ups, referral to EAP, medical concerns/clearance, legal medical advisement that we receive from Dr. Kuhnen when out of RN Scope of Practice issues, record of **ALL FRA Certification Physical Exam results, recording employee information related to Sleep Apnea Policy**, pulling employee from and returning to service. And much more.

It is VERY concerning that ANYONE, not just Amy or John, have the ability to edit any of the entries that are made in this system. At any time. Ever.

Registered Nurses are legally required to document while working as a RN. Under our RN license, mistaken entries are NOT to be deleted, but instead need to be noted as an error, and date, timestamped and signed off. If it were paper form, a line through would be required so it would still be legible, with the same date/time/initial requirements. As RN's it is expected that our employer provides us with protections that these documentations/records are legally protected and secured at the highest level so that they can be recalled if/when ever needed in the future. Our licensure could be at stake.

I've attached the recently changed job position for RN's in Occupational Health/Medical Services. We were downgraded from "Senior" to "Lead", however a Registered Nurse active license is required for the role. I have held my RN license since 1998 and plan to keep it for many years to come.

The current practice of Amtrak's Medical Services documentation system does not protect it.

Thank you,

Lisa Stott, BSN RN

Sr. Occupational Health Nurse

Amtrak | 2955 Market Street, Box 67 | Phila, PA 19104





# Exhibit L6

## Fwd: Whistleblower Protections for OSHA Complaint Case

Lisa <████████████████>
To: Jessica Carson <████████████████ ██ ██ bm>

Tue, Jul 15, 2025 at 8:59 PM

Sent from my iPhone

Begin forwarded message:

**From:** LISA STOTT <████████████████>
**Date:** July 15, 2025 at 9:16:25 PM EDT
**To:** McCordWolbert.Jacob.R@dol.gov, LISA STOTT <████████████████ >
**Subject: Whistleblower Protections for OSHA Complaint Case**

Hi Mr. McCord-Wolbert,

My name is Lisa Stott.
My address is ██████████████ Philadelphia, PA 19134
My cell number is █████████████ and email is █████████████
I have been a Registered Nurse for over 25 years.

I currently work for Amtrak out of 30th Street Station in Philadelphia.
I am an Occupational Health Nurse working in Amtrak Medical Services.
I have been employed in this same role for over 3 years now.
Amtrak Medical Services Dept is based out of 30th Street Station, however, we are the only medical department in the company and cover the entire country including all train stations, rail yards, and all Amtrak agreement and management employees, currently approx 22,000.

My manager is Amy Milhorn, Senior Manager, Occupational Health Programs. Amy is also a Registered Nurse. Besides myself, there is one other Registered Nurse in Medical Services. We have a Corporate Medical Director, who is an Amtrak employee, Dr. Ann Kuhnen. Amy directly reports to Dr. Kuhnen. Both Amy and Dr. Kuhnen were employed here before I arrived and both have been in these roles the entire time I have been employed here.

I am contacting you now because I have been raising several significant and very serious safety concerns to my manager, Amy Milhorn, and Dr. Kuhnen for several months now. These concerns relate to FRA compliance, medical records security, failure to have a BBP program and offering Hep B vaccinations to employees who will be directly exposed to blood/bodily fluids, responsible for disposing of sewage off the train, or potential for needlesticks. Restricted Medications that are approved by Amtrak's Medical Director, that allow for employees in very safety sensitive positions to be on medications that may cause impairment while on the job, including those holding a DOT/CDL Cert, failure to follow Amtrak's own policies, failure to ensure workers taken from an Amtrak site via EMS or transport to ER not being cleared/ensured safe to RTW ie/engineers taken off train by EMS for chest pain and return right to work as engineer

of train without any medical clearance. Engineers drive the train and are the only one responsible for all movement of the train while on it. They are often the only person in/allowed in the car, so a medical emergency could be a potential mass casualty incident.

My concerns were never investigated or addressed. In fact, I was harassed, maligned, discriminated against, badmouthed and disparaged to other Amtrak managers, and my professional reputation and clinical nursing judgment called into question in front of teammates, peers and our 3rd party Medical vendor, including their Head Nurse and Medical Director, all by Amy Milhorn. I personally informed Dr. Kuhnen about these issues and while less obvious, still continue to occur.

In January of 2025, I then brought these concerns to HR and was told it would be "looked in to". No official changes were made and the risks identified remained. By then I started attending monthly Safety Meetings at 30th St and spoke with Wayne Moses, Lead Operational Safety Specialist and Safety team organizer. He advised me to submit my concern/s through our internal Safety Reporting System, which I did in March 2025. After several weeks with no response, I finally to submitted to Amtrak's OIG.

Again with no follow up, I contacted the OIG, and was advised it was escalated to the Deputy Investigator of OIG and then returned to Amtrak HR to investigate and report back on.

In early April I was contacted by Amtrak's Senior Manager of Compliance, Joanne Norman. She set up a meeting for us to discuss some of my concerns: failure of Amtrak to provide medical records/nurses notes when receive legal request/subpoenas, which is the concern I submitted to the internal reporting system. This is potential failure of discovery and legal nightmare for cases already completed. This was a main part of my job while I was employed with Pepsi, sending copies of our electronic medical records so I was well aware of the need to provide. I informed Joanne that I had brought this up multiple times with Amy and Dr. Kuhnen and had been given different reasons on why it could not be provided. They reported it was not possible, it was too time consuming, that the request had to go to the IT department. These were all excuses. I was able to pull the document easily, and confirmed with IT that they do not get any legal requests for medical documents, only medical services does.

I also discussed my concerns with the Restricted Med list which allows employees to take medications, even impairing meds, without reporting use of it to Amtrak. This was especially relevant as we had just had an Amtrak employee who holds a CDL driving fellow employees in a company truck, and stopped at a Methadone clinic to take his dose on his way back to the shop because he didn't have time to go before work. If not for his fellow employees notifying their manager with concerns of his safety to drive, Amtrak would have never known. I expressed my overwhelming concern because another nurse in Medical Services, who was completely unaware of the situation, was given this employees "new" DOT exam and "expected" to know that the employee was to reveal his Methadone treatment. The employee did not, was awarded a 2 year DOT cert and the nurse entered the info as usual. The nurse was eventually written up for egregious failure to flag that exam so that he would not be permitted to work with a CDL at Amtrak. It was a final written warning with termination pending due to a failure to know what she was supposed to know. Dr. Kuhnen knew this employee was on Methadone, Amy Milhorn knew this employee was on Methadone, it was not charted in his medical file, nor shared with this nurse, who was the unlucky one to get the final result. She was set up to fail by the very people who had the ability to prevent this employee from even going for an Amtrak paid for DOT/CDL exam in the first place. It is an disqualifier by DOT standards and the employee would be unable to hold a CDL while under Methadone treatment. Dr. Kuhnen and Amy both knew this. Neither took

25

accountability. This situation escalated to the Senior VP of Safety and was sent down the chain of command to pin this on the nurse, Jessica Carson. That could have very easily been me to get that exam and no knowledge of the surrounding issues. I could have had the write up over it. Ultimately, Jessica Carson was fired in a "Reduction in Force" excuse.

During the time this all occurred, I was falsely accused of making a discriminatory, racial comment towards another coworker. Amy contacted me and said another coworker claimed I made a racially motivated statement towards her "a year ago" and that she, Amy, was not concerned because she did not believe it. She told me not to go to HR as we didn't want them to get involved. I was contacted by Dr. Kuhnen the next day who wanted me to attend a meeting with her, myself and the coworker making the statement. Dr. Kuhnen also advised to not involve HR so they did not "peel back the onion of Medical Services". I agreed to the meeting but was not going to apologize as I know I did not make the alleged statement. Dr. Kuhnen then asked me to "just say it landed wrong" and let her vent her feelings. After thinking about how this would not be in my best interest, I requested that I have an HR rep at the meeting so the correct narrative came out of this. I was not taking ownership of this, it could be career ending for me, and I did not say it. I copied HR on that response and Dr. Kuhnen quickly cancelled the meeting stating "i obviously did not understand the meaning of the meeting".

I was questioned by HR the next day and ultimately an investigation was done. Ultimately it was unfounded. I reported this whole scenario to Employee Relations, the VP of HR and Andria Botig, Sr Director HR Investigations and Compliance. My complaint was that Amtrak has a clear policy for all managers who learn of it, to reporting any/all claims of racism/discrimination immediately to the Ethics Line. Dr. Kuhnen did not. She did not report to HR, nor did she want them involved. She attempted to coerce me into not involving them and clearly was not reporting to the Ethics line. She was doing this underhanded and in my opinion, retaliating against me for voicing concerns she failed to address.

I believe that the safety concerns/violations and failures to act, which still have yet to be updated or changed, are a very serious and have a high potential to cause serious harm or legal consequences.

Just this week I have been specifically critically targeted by Amy over my hours worked, however, she does not monitor any other salaried employee for their hours worked. I put in a 45 hour plus work week regularly. I have never received a write up and my performance evaluations every year have been above standard. I was even financially awarded for doing such good work year after year.

I am in fear of receiving a write up or placed on a Performance Improvement Plan sometime this week as Amy has been especially critical of all my work so far this week. This is the same pattern that happened with Jessica, who ultimately was terminated.

I can provide dates, times, emails, and screenshots of most of what I am reporting. I look forward to speaking with someone regarding my claims of retaliation for speaking up and out about serious safety concerns at work.

Thank you for your time and attention.

Lisa Stott, BSN, RN

# Exhibit L7

**Lisa Stott**

Re: Information from Amtrak's Safety and Security All Hands meeting held on June 5, 2025

On June 5, 2025, while I was still an Amtrak employee working in Medical Services, I attended an All Hands Meeting that was presented to all Safety and Security employees via a Teams Meeting.

The call was led by Steve Predmore, Executive VP of Safety and Security. He began the meeting by reporting on the "really, really exciting projects" that were advancing across the country. He also reported that he had the chance to "meet the safety team" and "go through what folks need for their work". He then turned the conversation over to Beth Termini, AVP of Safety and Security.

She "wanted to open up our time together today acknowledging the last month and what we've all kind of had to deal with, with the departure of some of our colleagues." She reported that "to manage costs, we had a target of eliminating 23 (management) positions". She went on to say that they were able to eliminate 17 of the 23 by "eliminating backfills that had not yet been filled" and "we did eliminate internship positions.". That was 17 of the 23 positions, "which left us with 6 positions that we had to let go". "I think we were able to execute that with dignity, integrity and consistent with our values". She added "there are no plans for any additional headcount reductions". She added "at this point we feel like we have done what we need to do". "Coming out of this round of reductions" she noted, "there is a lot of change in our department. "

Beth then went on to discuss the leadership/management changes and programs affected by these changes, including the Director of Operational Safety, standing up the Senior Manager Locomotive Practices and Assurance Office, Director of Operational Safety and responsibility for system safety and emergency management under Steve Ladaslaw. Also, the "setting up of human factors and fatigue risk management programs" noting that there is a lot of work to be done. It was also noted that construction safety manager responsibilities were reassigned to the new Director of Occupational Safety, who was to be starting the following Monday.

Beth went on to report that "we had to make some changes on Dr. Kuhnan's side within Medical Services and Right Care Day One". "We eliminated two positions and are not backfilling another one". She went on to note that "we consolidated some of the work, reassigned and spread work out among the existing team. So they've had the biggest impact.".

After that Amtrak Police Department Captain Angelo went on to discuss crime rates and security metrics. Crimes against persons were up 16% over the past years. Crimes against property and onboard train security operations were over target as well.

The conversation then turned to the employee FR incident rates and that it is a collective effort to identify hazards in the work area that contribute to injuries and how to mitigate them. One area of concern was the major operating rule violation rate. We are relying upon single points of failure and uptick in incidents, noting that is what you would expect in a distracted workforce, with one of the challenges being how do you build in redundancies where those single points of failures are present? And two, how do we focus people on the most fundamental tasks they are performing on a daily basis? What we are seeing right now is actions and activities in the restricted speed areas. We have a lot of work to do in that space. We are working on customer safety but we still have strides and opportunities in communicating to customers about hazards and navigating around our facilities in a safe manner.

Tim Tyrann went on to discuss the "really extensive SMS audit performed by Transport Canada". He noted that the FRA is going to come next year to audit us.

The meeting then opened up for Q&A. Wayne Moses thanked all employees who participated in the recent Active Shooter exercises in Phila and the Call Center. No other questions were asked.

The above information was recorded in my own personal notes that I took while physically attending this meeting via a Teams Webinar on June 5, 2025.

For additional clarity: of the 6 positions that were cut under this "Reduction in Force", two were directly under the leadership of Steve Predmore, Beth Termini, Dr. Kuhnen and Amy Milhorn in Amtrak Medical Services. 1. Jessica Carson RN and 2. Appollonia McKee Occupational Health Coordinator.

Respectfully,

Lisa Stott 12 23 25

Lisa Stott

# Exhibit L8

| From: | Scott, Lisa |
|---|---|
| To: | Barrows, Randal; Heisner, Nicole L; Selapack, Michael P |
| Cc: | Scott, Lisa |
| Subject: | Follow up from Medical Services Meeting 3/26/25 |
| Date: | Thursday, March 27, 2025 9:44:01 AM |
| Attachments: | image001.png |
| | RTW SOP.docx |
| | PPE Ab Glycosuria Letter .docx |
| | Pre-placement follow up letter seizure updated May 2024 version 3.docx |
| | AMS Procedure DOT-CDL Physicals 8 29 23.docx |

Good Morning,

Thank you for taking the time yesterday to hear some of our concerns on our current processes in Medical Services.

I thought it might be helpful for you to have a better understanding of the SOP's we currently rely on. (Samples attached)

As you can see, they are not Amtrak official, locked, and editable by anyone on our team, at any time. Sign offs about the edits made are vague and not always included. We also don't maintain a copy of the original version, and additional updated versions, after edits are done. The original SOP is (re)used and edits/updates made, so there is no ability to compare or have older valid versions on hand if need for anything later on.

I have also included a couple of the letters we discussed. While we have some basic templates, they all need to be individualized to the employee/candidate and medical issue/s. Some may get multiple letters if there are multiple issues. This often also includes creating a FedEx label to send out to ensure the emp/candidate officially receives it and we have proof of delivery.

On any given day, the nurses specifically work out of these platforms:

- **Outlook**- our personal email box- all Amtrak communications, etc and emails back from employees/managers/other depts, etc we have interacted with and respond to us individually
- **Outlook**- our assigned work box - which all exams, RTW info, notes, emails, VM and faxes get sent to that come into Main Medical Services inbox
- **Outlook Pre-Placement Exams box**- each nurse has assigned letters of alphabet that exams get distributed to their boxes for review and clearance all day
- **Outlook Medical Services boxes**- (one for emails and one for VM's and faxes{ each day one MS team member takes coverage of these boxes and distributes or handles all emails, voicemails and faxes for whole department, in addition to your other full time work throughout the day
- **Avaya** – where we have to  log in to get any voicemails and faxes sent electronically to MS
- **FMP**- documenting all encounters (phone, email, text) with EE and other depts, all RTW information, ordering testing, clearance to RTW. We also have additional tabs that we enter the DOT exam results and PERIOD exam results and sleep apnea program

31

Information and for tracking compliance

- **Sharepoint**- to store employee records
- **Medical Services Sharepoint**- where our SOPs and letter templates, etc are stored
- **SPARTN**- enter medical clearance after PE review for FRA Certification
- **CHS**- our vendor that uploads exam results
- **FedEx**- to create labels for mailing important letters/info out to EEs
- **Teams- general Med Services Team Chat** for all staff to communicate throughout the day, then there are additional teams channels specific for the nurses, one for PrePlacement Exam Questions
- Any assigned side projects that we were tasked with. Personally I handle ADA Requests, attend the weekly ADA panel review, and follow ups with determinations sent to Medical Services.
- I also handle half of the Sleep Apnea Program, including continuous follow up on employee's who fail to interact/initial test when referred, request to engage with the second opinion process and alerting managers/employees of potential pull from service for non-compliance.

As you can see, we toggle through MANY programs all day long. Most of them lock you out after some time of inactivity. As Jessica stated yesterday, we have asked to have more structure in our days/flows of work so that we are not constantly running in circles all day, everyday. Periodic exams and Preplacement exams are made available from the vendors and often we see it may have been in their hands for sometimes up to a week. Yet, when we get them in our work box, the expectation is that it is handled shortly after receipt. We "triage" all of our work all day, looking for any RTW as priority to get the employee back as soon as possible. Employees and managers frequently call Medical Services to get the employee back asap. We do our very best. Our VM and E/M response says we will respond within 48 hours, however, the expectation is that we clear the same day. This causes undue frustration and anxiety on our part to race through information, however, as I stated yesterday, cases are complex and require additional clearances (neuro/cardiac for example) and creates a lot of back and forth for us. Our system does not allow us to flag (park) these cases securely so that we are assured they will not get lost in the scheme of things. We essentially "flag" an email, that may be one of 50 others we have flagged for follow up.

As I said yesterday, DESPITE the obstacles and hurdles that do not set us up for success, we do a darn good job. WE don't get that positive feedback however, we only hear when we make (inevitable because of the failure of the systems) mistakes. With the increasing amount of workload expected to be coming to MS when FRA updates are enacted, we will not be able to function at the level we do now. We can barely keep up with it now.

Any updates/improvements to simplify or streamline our work is greatly appreciated.


Respectfully,
Lisa Stott, BSN RN
Sr. Occupational Health Nurse
Amtrak | 2955 Market Street, Box 67 | Phila, PA 19104