# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

JESSICA CARSON,

      Plaintiff,

vs.

NATIONAL RAILROAD PASSENGER
CORPORATION, d/b/a Amtrak,

      Defendant.

No. C26-2001-LTS-KEM

**MEMORANDUM
OPINION AND ORDER**

## I.   INTRODUCTION

This matter is before me on a motion (Doc. 11) to compel arbitration and stay proceedings filed by defendant National Railroad Passenger Corporation, d/b/a Amtrak (Amtrak), as to all claims against it.[1]  Plaintiff Jessica Carson, who is proceeding pro se, has filed a resistance (Doc. 16), to which Amtrak responded with a motion (Doc. 21) to strike.  Carson then filed a motion (Doc. 23) for extension of time, to exceed page limits, and for clarification/leave regarding exhibits.  Amtrak filed a resistance (Doc. 27) and Carson filed a reply (Doc. 28).  Oral argument is not necessary.  *See* Local Rule 7(c).

## II.   BACKGROUND

Carson's complaint (Doc. 4) alleges that she was employed as a remote occupational nurse for Amtrak and that she made both internal and external complaints regarding perceived safety issues.  She alleges that because of her complaints she was

---

[1] Amtrak also submitted a supporting brief (Doc. 12).  Other pending motions include plaintiff's motion (Doc. 2) for preliminary injunction and Amtrak's motions (Docs. 19, 20) to strike a supplement (Doc. 15) plaintiff made to her complaint) and a reply (Doc. 17) plaintiff made in support of her motion for preliminary injunction.  Based on my resolution of the motion (Doc. 11) to compel arbitration and stay proceedings, these motions will be resolved as well.

subjected to a series of retaliatory actions that ultimately resulted in the termination of her employment. She alleges one claim of retaliation in violation of the Federal Rail Safety Act (FRSA), 49 U.S.C. § 20109.

Amtrak moves to compel arbitration and stay proceedings or dismiss this action pursuant to the Federal Arbitration Act (FAA), based on an Arbitration Agreement entered into by Carson and Amtrak.[2] Doc. 11. In support of its motion, Amtrak has submitted a declaration (Doc. 11-1) of Tiffany Baynard, Senior Manager for Talent Acquisition Support and Process Optimization at Amtrak.

Baynard's declaration explains that she is familiar with and has access to Amtrak's business records, including personnel files, its standard Arbitration Agreement, employee information and records and documents presented during Amtrak's hiring and onboarding process. *Id.* at 2. She notes that beginning in 2018, each employee who was hired or promoted to a management or non-bargaining unit position was provided with Amtrak's standard Arbitration Agreement and was required to acknowledge and agree to such agreement as part of the application process. *Id.* at 2-3. Carson acknowledged and agreed to the Arbitration Agreement on December 22, 2022. *See* Doc. 11-1 at 6-14. Specifically, this part of Carson's application states:

> By submitting this application, I am acknowledging that I have read and that I agree to be legally bound by Amtrak's Arbitration Agreement, which is a condition of this application and any subsequent employment with Amtrak (except employment in a position covered by a collective bargaining agreement). Please review the linked Arbitration Agreement – which applies to you and Amtrak – before submitting your application. You are encouraged to print a copy of the Arbitration Agreement and retain it for your own records.

---

[2] Amtrak also argues that if the FAA does not apply, the court must still enforce the arbitration agreement under the Texas Arbitration Act and/or the Iowa Arbitration Act. *See* Doc. 12.

2

*Id.* at 9.  The application indicates Carson selected "I agree" and electronically signed her name.  *Id.*  Baynard states that an applicant would not be able to successfully submit an application without acceptance and acknowledgment of the Arbitration Agreement.

Amtrak hired Carson on or around February 21, 2023, providing a written offer reminding her that as a condition of employment, she was required to be bound by the Arbitration Agreement.  *Id.* at 18-20.  Carson accepted the position and worked with Amtrak through May 2025.

### III.  ANALYSIS

#### A.  Applicable Law

The FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

9 U.S.C. § 2.  On a motion to arbitrate, the court's role is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute."  *Triplet v. Menard, Inc.*, 42 F.4th 868, 870 (8th Cir. 2022).  If a valid agreement that covers the dispute exists, the court "shall make an order directing the parties to proceed to arbitration."  9 U.S.C. § 4.   "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Lyster v. Ryan's Fam. Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001) (cleaned up).

State law governs whether a valid agreement to arbitrate exists and federal substantive law of arbitrability governs whether the dispute falls within the scope of the

agreement. *Khuu v. Citibank, N.A.*, 4:24-CV-04037, 2025 WL 942970, at *8 (D.S.D. Mar. 28, 2025) (citing *Triplet*, 42 F.4th at 871 and *Dominium Austin Partners, LLC v. Emerson*, 248 F.3d 720, 729 n.9 (8th Cir. 2001)). The court applies a summary judgment standard if a party presents evidence outside the pleadings. *City of Benkelman, Nebraska v. Baseline Eng'g Corp.*, 867 F.3d 875, 881 (8th Cir. 2017). Otherwise, the court may apply a Rule 12(b)(6) standard. *Id.*

## B. *Motions to Strike and For Extension of Time*

Amtrak moves to strike Carson's resistance based on various violations of the court's Local Rules. It argues that her resistance is more than double the number of pages permitted by the Local Rules, Carson did not seek leave to exceed the page limit prior to filing her resistance, did not confer with Amtrak about exceeding the page limit and included redundant and immaterial matters in her resistance. Carson seeks leave to exceed page limits, in addition to other relief related to motions to strike other filings.

The court should construe pro se filings liberally and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Rinehart v. Weitzell*, 964 F.3d 684, 687-88 (8th Cir. 2020) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam)). While Carson should have consulted with Amtrak's counsel and sought leave of court to exceed the page limits prior to filing her resistance, I will grant Carson's motion for leave to exceed page limits and deny Amtrak's motion to strike.

## C. *Arbitrability*

Carson disputes the applicability of the FAA and further argues that the FRSA prohibits the enforcement of predispute arbitration agreements with regard to claims under the FRSA. Additionally, she argues that the Arbitration Agreement itself excludes claims for temporary or preliminary injunctive relief such that her motion for preliminary injunction seeking statutory reinstatement and protection from ongoing retaliation should be decided by the court.

Amtrak argues that the parties clearly and unmistakably provided that the arbitrator, not a court, must decide gateway issues including the enforceability or validity of the Arbitration Agreement. *See* Doc. 11-1 at 31 ("Except as set forth in [a section that does not apply here], the arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or formation of this Agreement."). As such, Amtrak argues I should refrain from addressing whether there is a valid agreement to arbitrate and whether the Arbitration Agreement encompasses the dispute. I will begin by addressing Carson's argument that claims brought under the FRSA are not subject to arbitration.

### 1.    *The FRSA's Nonwaiver Provision*

Carson relies on the 49 U.S.C. § 20109(h), which states: "The rights and remedies as provided under this section may not be waived by any agreement, policy, form, or condition of employment." 49 U.S.C. § 20109(h). Carson argues that the FRSA prescribes a specific, sequential enforcement structure culminating in review by a federal district court and that compelling arbitration would displace the statutory enforcement mechanism. She asserts the Arbitration Agreement recognizes such statutory limitations by noting the agreement excludes "[d]isputes that may not be subject to predispute arbitration agreements as provided by an applicable federal statute." Doc. 12-1 at 25. Additionally, she argues state arbitration law cannot override the FRSA's express nonwaiver provision based on the Supremacy Clause.

Amtrak argues that courts have analyzed similar language under the Age Discrimination in Employment Act (ADEA) and have consistently held in favor of arbitration, noting that the limitations in the ADEA apply only to the substantive rights available under the law and not to procedural rights, such as trial by jury. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 259 (2009); *McLeod v. Gen. Mills, Inc.*, 856 F.3d 1160, 1164 (8th Cir. 2017). Amtrak argues that compelling arbitration of Carson's FRSA

5

claim does not impact her substantive rights under the statute as the Arbitration Agreement states "[t]he arbitrator shall have the authority to . . . award remedies and relief to the same extent as would be available if the claim were litigated in court" and "[t]he arbitrator is without jurisdiction to apply any different substantive law or law of remedies." Doc. 12-1 at 28-29. Finally, Amtrak relies on *Hessler v. Gen. Elec. Co.*, Case No. 18-CV-6569, Doc. 38 (N.D. Ill. Feb. 13, 2020), in which the court compelled arbitration of an FRSA retaliation claim.[3]

Given the dearth of authority on the arbitrability of FRSA claims, I agree with the parties that it is appropriate to look at similar nonwaiver provisions in other federal statutes. In *14 Penn Plaza*, the Court relied on *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), which held that an employee who had agreed to waive his right to a federal forum could be compelled to arbitrate a federal age discrimination claim.[4] Notably, the nonwaiver provision of the ADEA at issue is not as strict as the FRSA, as it provides that "[a]n individual may not waive any right or claim under this Act *unless the waiver is knowing and voluntary*." 29 U.S.C. § 626(f) (emphasis added). Carson argues Congress has created a specific enforcement structure and expressly prohibited waiver of rights and remedies by condition of employment and that courts must give effect to that statutory design. Doc. 16 at 35. She also argues arbitration may not be imposed where it would "override the statutory text." *Id.* (quoting *New Prime Inc. v. Oliveira*, 586 U.S. 105 (2019)).

"The burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987). "If Congress

---

[3] The court in that case did not analyze 49 U.S.C. § 20109(h).

[4] The Court recognized that the ADEA had subsequently been amended to include a nonwaiver provision but noted in dictum that this provision "did not explicitly preclude arbitration or other nonjudicial resolution of claims." *Gilmer*, 500 U.S. at 29.

6

did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent 'will be deducible from [the statute's] text or legislative history,' . . . or from an inherent conflict between arbitration and the statute's underlying purposes." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 632-37 (1985)). In *McMahon*, the Court examined the nonwaiver provisions of the Securities Exchange Act of 1934 (Exchange Act) and the Racketeer Influenced and Corrupt Organizations Act (RICO). *Id.* Section 29(a) of the Exchange Act declares void "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of [the Act]." 15 U.S.C. § 78cc(a). The Court explained this provision forbids "enforcement of agreements to waive 'compliance' with the provisions of the statute" and "only prohibits waiver of the substantive obligations imposed by the Exchange Act." *Id.* at 228.

The *McMahon* Court distinguished *Wilko v. Swan*, 346 U.S. 427 (1953), in which it held that a predispute agreement could not be enforced to compel arbitration of a claim arising under the Securities Act. The *Wilko* Court declined enforcement because "arbitration was judged inadequate to enforce the statutory rights created by [the Securities Act]." *See McMahon*, 482 U.S. at 229. The *McMahon* Court noted that the mistrust of arbitration that formed the basis of its *Wilko* opinion in 1953 was difficult to square with the current assessment of arbitration as a competent forum. *Id.* at 233. The Court rejected an argument that an arbitration agreement affects an impermissible waiver of the substantive protections of the Exchange Act. *See id.* at 229-30 ("[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 628)). The Court concluded that Congress did not intend the nonwaiver provision to bar enforcement of all predispute arbitration agreements. *Id.* at 238. With regard to RICO, the Court found nothing that indicated a congressional intent to exclude civil RICO claims from arbitration. *Id.* It also found there was no irreconcilable conflict between arbitration and RICO's underlying

7

purposes. *Id*. at 242. Thus, claims under both the Exchange Act and RICO were held to be subject to arbitration under the parties' predispute arbitration agreement.

The Supreme Court has also examined the nonwaiver provision of the Credit Repair Organizations Act (CROA). *See CompuCredit Corp. v. Greenwood*, 565 U.S. 95 (2012). That provision provides: "Any waiver by a consumer of any protection provided by or any right of the consumer under this subchapter – (1) shall be treated as void; and (2) may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(a). The CROA also contains a disclosure provision, meaning credit repair organizations must provide a statement to consumers before any contract is executed, which includes the following language: "You have a right to sue a credit repair organization that violates the [CROA]." 15 U.S.C. § 1679c(a). The respondents argued that taken together, the statute provides consumers a right to bring an action in a court of law and, because an arbitration agreement would waive that right, it could not be enforced. *Id*. at 99. The Ninth Circuit agreed.

The Supreme Court concluded the disclosure provision did not provide consumers with a right to bring an action in a court of law, only a right to receive that statement. To the extent the CROA provides a "right" to bring an action in court in another provision of the statute, the Court observed that it is commonplace for statutes to create civil causes of action, but doing such does not establish a "contrary congressional command" overriding the FAA. *Id*. at 100-01. It discussed *McMahon*, *Gilmer* and *Mitsubishi Motors*, noting that it has "repeatedly recognized that contractually required arbitration of claims satisfies the statutory prescription of civil liability in court." *Id*. at 101. It observed that Congress could have used clearer language had it intended to restrict the use of arbitration for such disputes, as it has done in other statutes. *Id*. at 103-04. Thus, it concluded "[b]ecause the CROA is silent on whether claims under the Act can proceed in an arbitral forum, the FAA requires the arbitration agreement to be enforced according to its terms." *Id.* at 104.

The FRSA does not contain any contrary congressional command that would preclude enforcement of the arbitration agreement. *See Gilmer*, 500 U.S. at 26 (noting that "[i]f such an intention exists, it will be discoverable in the text of the [statute], its legislative history, or an 'inherent conflict' between arbitration and the [statute's] underlying purposes."). Similar to the CROA, the FRSA is silent as to whether claims under the Act can proceed in an arbitral forum. *See CompuCredit*, 565 U.S. at 103 ("When [Congress] has restricted the use of arbitration in other contexts, it has done so with a clarity that far exceeds the claimed indications in the CROA."); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 516 (2018) ("[W]e've stressed that the absence of any specific statutory discussion of arbitration or class actions is an important and telling clue that Congress has not displaced the Arbitration Act."). Carson cites only the enforcement structure for bringing a claim to argue that FRSA demonstrates clear congressional intent. That structure provides that if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint, the employee may "bring an original action at law or equity for de novo review in the appropriate district court of the United States." *See* 49 U.S.C. § 20109(d)(3). She argues that compelling arbitration would replace federal court review and eliminate the jury trial expressly preserved in the statute. Carson contends this is different than the "right to sue" discussed in *CompuCredit* because that statute did not prescribe a specific judicial enforcement sequence. She argues: "When Congress both prohibits waiver and specifies a judicial enforcement pathway, that constitutes a clear contrary command sufficient to displace predispute arbitration." Doc. 16 at 24.

Carson cites no case law for the proposition that a prescribed enforcement structure is evidence of congressional intent to prohibit arbitration. In *Robertson v. Intratek Computer, Inc.*, 976 F.3d 575, 577 (5th Cir. 2020), the court considered a similar administrative scheme under the federal whistleblower statute. *See* 41 U.S.C. § 4712(c)(2) (providing "[i]f the head of an executive agency issues an order denying relief under [(c)](1) or has not issued an order within 210 days after the submission of a

9

complaint under subsection (b) . . . and there is no showing that such delay is due to the bad faith of the complainant, the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the contractor or grantee to seek compensatory damages and other relief available under this section in the appropriate district court of the United States."). The court concluded the statute did not render unenforceable an arbitration agreement between an employee and his employer. It examined that the statute requires a complainant to exhaust administrative remedies before filing suit and that administrative remedies are exhausted when the agency acts or fails to act for specified time periods. *Id.* at 580. It noted that the language "[s]uch an action shall, at the request of either party to the action, be tried by the court with a jury" did not provide a freestanding right or remedy to a jury trial. Additionally, it concluded the nonwaiver provision[5] did not take away plaintiff's "right" or "remedy" to a jury trial and prevent arbitration. The court reasoned:

> Robertson confuses the rights and remedies created by § 4712 with the means it provides to secure them. Section 4712 creates whistleblower rights: "An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged demoted, or otherwise discriminated against as a reprisal for" blowing the whistle on certain government-contracting abuses. *Id.* at § 4712(b). Section 4712 further specifies that "[a]n action under this paragraph may not be brought more than two years after the date on which *remedies*" – that is, administrative remedies – "are deemed to have been exhausted." *Id.* at § 4712(c)(2) (emphasis added). Thus, the text and structure of § 4712 make clear that a jury trial is one way to vindicate a whistleblower's statutory *rights* after the whistleblower exhausts administrative *remedies*; the jury trial is not itself a "right" or "remedy" created by § 4712.

*Id.* (emphasis in original). The *Robertson* court also declined to find that the legislative history – specifically, a prior Senate draft version of the antiwaiver provision – provided

---

[5] *See* 41 U.S.C. § 4712(c)(7) ("The rights and remedies provided for in this section may not be waived by any agreement, policy, form, or condition of employment.").

proof of congressional intent to prohibit arbitration, noting that it was not clear why a specific reference to predispute arbitration agreements was dropped from the adopted text. *Id.* at 582.

The reasoning in *Robertson* applies here. That case involves an identical nonwaiver provision and a similar enforcement structure. Like § 4712, the FRSA's structure requires administrative exhaustion prior to filing in federal court, at which point the action may be tried before a jury. This does not confer a "right" that demonstrates a congressional intent to prohibit arbitration. Additionally, as explained in *Robertson*, the nonwaiver provision refers to substantive rights or claims. *Id.* at 581-82 (citing *CompuCredit* as determining the waiver of "initial judicial enforcement" is not a waiver of a right covered by an antiwaiver provision). *Robertson* also discussed many of the same Supreme Court cases discussed above and noted they reflect "the Supreme Court's dogged insistence that Congress speak with great clarity when overriding the FAA." *Id.* at 582. Carson has cited no other basis for arguing that the FRSA contains a contrary congressional command contrary to prevent enforcement of the arbitration agreement. As such, I find the FRSA's nonwaiver provision and enforcement structure do not preclude enforcement of the Arbitration Agreement.

### 2. *Applicability of the FAA*

With regard to whether the FAA applies to her agreement with Amtrak, Carson cites 9 U.S.C. § 1, arguing that when this section is invoked, the court, not an arbitrator, must decide applicability. Section 1 states "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Amtrak argues this exclusion does not apply to Carson based on (1) the legislative history, (2) Carson not being part of a collective bargaining agreement and (3) Carson not being actively engaged in the transportation of goods across state lines during her employment with Amtrak. It states:

11

Congress excluded certain railroad employee contracts from the FAA's coverage to avoid "unsettling" other "statutory dispute resolution schemes" that applied to them, specifically the Railway Labor Act ("RLA"), the passage of which was imminent when the FAA was enacted. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 120-21 (2001); *accord Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 8 (D.D.C. 2021). The RLA provides a mandatory dispute resolution scheme for "railroad employees" working under union collective bargaining agreements that include contractual grievance procedures culminating in binding arbitration before a National Railroad Adjustment Board. *Consol. Rail Corp. (Conrail) v. Ry. Labor Exec. Ass'n*, 491 U.S. 299, 303-04 (1989. The RLA's contractual arbitration procedures do not apply to employees like Plaintiff who are not covered by a union collective bargaining agreement and who are not actively engaged in the movement of good or passengers as part of their job. *Singh v. Uber Techs.*, 67 F.4th 550, 557 (3d Cir. 2023), *citing Circuit City Stores, Inc.*, 532 U.S. at 118. Moreover, Plaintiff, not Amtrak, bears the burden of showing that the RLA [sic] exemption applies. *Wilson v. Get It Now, LLC*, 2025 U.S. Dist. LEXIS 154193, at *6 (Minn. D.C. 2025). Here, Plaintiff has not and cannot meet her burden. Plaintiff worked in an administrative service position with Amtrak, evaluating the fitness for duty of employees. (Doc. 4, p. 12). She was not "actively" engaged in transportation of goods across state lines, nor was the interstate movement of goods central to her job. Likewise, Plaintiff did not supervise employees who were directly involved in the transportation of goods across state lines. *See generally, Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 352-53 (8th Cir. 2005) (citing factors used to analyze exemption and holding that the exemption did not apply to a customer service representative). Thus, the FAA's exclusion of railroad employee contracts does not apply to Plaintiff. *See* 416 U.S. at 275; 9 U.S.C. § 1.

Doc. 12 at 5, n.1. Amtrak's reasons are not persuasive, primarily because they ignore certain basic principles of statutory construction, such as: (1) that "[t]he plain language of a statute is the starting point in every case involving statutory construction," *see Adams v. Apfel*, 149 F.3d 844, 846 (8th Cir. 1998) and (2) "[i]f the statute is clear and unambiguous, judicial inquiry is complete." *Id*. Amtrak has not cited any case law to support its interpretation that section 1 does not apply to all "railroad employees." Many of the cases it cites have to do with the residual clause ("any other class or workers engaged in foreign or interstate commerce"), not the specific category of "railroad

12

employees." At least one federal court has rejected similar arguments. *See Lytton v. Southern Cal. Regional Rail Auth.*, 683 F. Supp. 3d 1101, 1106 (C.D. Cal. 2023) (concluding the residual clause was inapplicable where there was no ambiguity about whether Section 1 applied to a railroad employee and that it did not need to analyze the legislative history of Section 1 because the meaning of the statute was clear on its face).[6]

Amtrak does not dispute that Carson was a railroad employee, stating only that she was not a railroad employee working under a collective bargaining agreement. I find Carson falls squarely within the categorical exemption of "railroad employee" and that her employment contract is therefore exempt from the FAA. *See Montoya v. National R.R. Passenger Corp.*, 118 F.4th 900, 902 (7th Cir. 2024) ("Amtrak is a railroad, and Montoya was its employee. That takes her, and this case, outside the Act."); *Lytton*, 683 F. Supp. 3d at 1106 ("Here, the Court finds that this case involves 'a contract of employment' of a 'railroad employee[]' and thus is plainly and squarely exempted from application of the FAA by 9 U.S.C. § 1").

### 3. *Enforcement Under State Law*

As noted above, Amtrak argues that even if the FAA does not apply, the Arbitration Agreement is nonetheless enforceable under either Texas or Iowa law. The

---

[6] The *Lytton* court also discussed *Circuit City Stores*, stating:

> Construing the residual phrase to exclude all employment contracts fails to give independent effect to the statute's enumeration of the specific categories of workers which precedes it; there would be no need for Congress to use the phrases 'seamen' and 'railroad employees' if those same classes of workers were subsumed within the meaning of the 'engaged in . . . commerce' residual clause" *Circuit City*, 532 U.S. at 114. "Railroad employees" must mean something different than a "class of workers engaged in foreign or interstate commerce." Under Defendants' proposed meaning, all "railroad employees" would be fully subsumed under the residual clause, a result that runs contrary to the canons of statutory interpretation.

*Lytton*, 683 F. Supp. 3d at 1107.

Arbitration Agreement provides that if the FAA does not apply, the parties stipulate and agree that the Texas Arbitration Act (TAA) will apply. Doc. 12-1 at 31. If the TAA does not apply, the Agreement provides the parties "mutually stipulate and agree that the applicable state arbitration act, if any, of the state where the dispute took place will apply." *Id*. "Any disputes about what law governs this Agreement will be decided by the arbitrator." *Id*.

Amtrak argues the arbitrator should determine the law that governs the Agreement. However, it contends that if I undertake this analysis myself, I should hold that the TAA applies. It reasons that under Iowa law, the parties' intent as evidenced by a choice of law provision, controls. Because the choice of law provision in the Arbitration Agreement reflects an intent to apply the TAA as an alternative to the FAA, I should apply the TAA and defer gateway issues of enforceability and validity to the arbitrator under the TAA. Carson argues the Supremacy Clause prevents enforcement of the Arbitration Agreement under Texas or Iowa law based on the FRSA's nonwaiver provision and the statute's sequential enforcement mechanism. For the reasons stated above, that argument fails.

"[S]tate contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants." *Anhui Powerguard Tech. Co., Ltd. v. DRE Health Corp.*, 95 F.4th 1146, 1149 (8th Cir. 2024) (quoting *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009)). Federal courts apply choice-of-law rules of the forum state. *John T. Jones Const. Co. v. Hoot Gen. Const. Co., Inc.*, 613 F.3d 778, 782 (8th Cir. 2010). Iowa choice-of-law rules apply the law of the forum with the "most significant relationship" to the contract. *Id*. at 783 (citing *Gabe's Const. Co., Inc. v. United Capitol Ins. Co.*, 539 N.W.2d 144, 146 (Iowa 1995)). Here, Carson was employed as a Senior Occupational Health Nurse working remotely from Iowa and Amtrak acknowledges that Iowa is the state where the dispute took place. Doc. 12 at 4-5. I agree Iowa has the most significant relationship. Thus, Iowa law applies to determine the existence of a contract. *John T. Jones Const. Co.*, 613 F.3d at 783. "Once

14

the existence of a contract is determined, the parties' intent as evinced in the choice-of-law provision controls." *Id.* (citing *Gabe's Const. Co., Inc.*, 539 N.W.2d at 146).

Under Iowa law, the elements of a contract are offer, acceptance and consideration. *Taggart v. Drake Univ.*, 549 N.W.2d 796, 800 (Iowa 1996). "An offer is a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his [or her] assent to that bargain is invited and will conclude it." *Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 203 (Iowa 1997) (alteration in original) (citation and internal quotation marks omitted). The existence of an offer is viewed objectively, not subjectively. *Id.* "An acceptance is 'manifestation of assent to terms thereof made by the offeree in a manner invited or required by the offer.'" *Van Arkel v. Warren Cnty.*, 36 F. Supp. 2d 979, 987 (S.D. Iowa 2005) (quoting *Heartland Express, Inc. v. Terry*, 631 N.W.2d 260, 270 (Iowa 2001)). Consideration may exist in many forms, including "continued employment and the mutual promise to resolve disputes according to the terms of the plan." *Owen v. MBPXL Corp.*, 173 F. Supp. 2d 905, 914 (N.D. Iowa 2001). Neither party disputes the existence of the Arbitration Agreement here. I find that under Iowa law, the parties entered into a valid Arbitration Agreement. Carson was required to acknowledge and agree to the Arbitration Agreement as part of the application process, which she did on December 22, 2022. When offered the job, she acknowledged and accepted the Arbitration Agreement and continued working with Amtrak through May 2025, demonstrating consideration and her agreement to be bound by its terms.

Now that the existence of a contract has been determined, "the parties' intent as evinced in the choice-of-law provision controls." *John T. Jones Const. Co.*, 613 F.3d at 783. While the parties intended for the FAA to control, I have determined Carson's employment contract is exempt from the FAA. In the alternative, the parties "mutually stipulate and agree that the TAA will apply." Doc. 12-1 at 31. The TAA provides that "[a] written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that . . . arises between the parties after the date of the agreement." Tex.

15

Civ. Prac. & Rem. Code § 171.001. Amtrak notes the standard to compel arbitration under the TAA is the same as under the FAA. *See Natgasoline LLC v. Refractory Constr. Servs., Co. LLC*, 566 S.W.3d 871, 884 (Tex. App. 2018).

Carson makes no argument as to why the agreement would be exempt or unenforceable under the TAA, other than the arguments previously addressed concerning the nonwaiver provision. "To compel arbitration under the [TAA], Defendants must show that the employees received notice of the binding arbitration agreement, accepted the agreement, and raise claims that fall within the scope of the agreement." *Long v. BDP Int'l, Inc.*, 919 F. Supp. 2d 832, 850 (S.D. Tex. 2013) (citing *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162-63 (Tex. 2006)). I find no reason why arbitration should not be compelled under the TAA, as there is no dispute that Carson had notice of and accepted the Arbitration Agreement. With regard to whether her claim falls within the scope of the Agreement, the Arbitration Agreement contemplates the arbitrator deciding such gateway issues. *See* Doc. 12-1 at 31 ("Except as set forth in the Class Action Waiver, Section 9.0, the arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or formation of this Agreement."). As such, I will compel arbitration under the TAA.[7]

### D. *Stay and Motion for Preliminary Injunction*

Carson argues that even if I compel arbitration, I should retain jurisdiction over and adjudicate her motion for preliminary injunction based on the following provision in the Arbitration Agreement: "[c]laims for temporary and/or preliminary injunctive relief in a court of competent jurisdiction" are excluded from the Agreement "if the award to

---

[7] It is not clear whether the Arbitration Agreement could be enforced under the Iowa Arbitration Act as that Act excludes contracts between employers and employees. *See* Iowa Code § 679A.1(2). Amtrak does not address this exclusion. Because I find that the TAA applies, I need not resolve this issue.

which the party may be entitled in arbitration may be rendered ineffectual without such relief; provided, however, that all issues of final relief shall continue to be decided through arbitration." Doc. 12-1 at 25. She argues that the relief she seeks (statutory reinstatement and protection from ongoing retaliation) are designed to prevent irreparable harm during pendency of proceedings and are not a final determination on the merits. She contends that staying the case would allow retaliation to continue.

I disagree. First, the "primary function [of a preliminary injunction] is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1342 (8th Cir. 2024) (quoting *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984)). Carson is no longer working for Amtrak and ongoing retaliation is not an issue.

Second, evaluation of a motion for preliminary injunction requires consideration of a plaintiff's likelihood of success such that the court would be required to consider the merits of Carson's claim. *See Manion v. Nagin*, 255 F.3d 535, 539 (8th Cir. 2001) (discussing that courts should not grant injunctive relief unless there is qualifying contractual language providing the court with clear grounds to grant relief without addressing the merits of the underlying arbitrable dispute). Third, Carson must demonstrate irreparable harm, which occurs "when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). If successful, Carson is entitled to "all relief necessary to make the employee whole." *See* 49 U.S.C. § 20109(e). This includes reinstatement, backpay with interest and compensatory damages. *Id.* There is nothing about Carson's alleged injuries to suggest she cannot be fully compensated through the relief available under the FRSA, such that a final arbitration award would be "ineffectual" without injunctive relief decided by the court pending arbitration. As such, it would be inappropriate to consider Carson's motion for preliminary injunction while compelling arbitration. Carson may, of course, seek preliminary injunctive relief in the arbitration process.

17

Regarding a stay, "[u]nder the Texas Arbitration Act, 'an order compelling arbitration *must* include a stay of the underlying litigation.'" *Escalera v. Murphy Well Control, LLC*, MO:22-CV-176, 2023 WL 8112499, at *6 (W.D. Tex. Oct. 13, 2023) (quoting *In re Gulf Expl., LLC*, 289 S.W.3d 836, 841 (Tex. 2009)). *See also* Tex. Civ. Prac. & Rem. Code § 171.025 ("The court shall stay a proceeding that involves an issue subject to arbitration if an order for arbitration or an application for that order is made under this subchapter."); Tex. Civ. Prac. & Rem. Code § 171.174 ("On request of a party, a court in which a pending judicial proceeding is being brought by a party to an arbitration agreement to obtain relief with respect to a matter covered by the arbitration agreement shall: (1) stay the judicial proceeding; and (2) refer the parties to arbitration."). Amtrak has moved to stay the lawsuit pending arbitration. Thus, I will stay this case pending resolution of the arbitration proceedings.

## IV.  CONCLUSION

For the reasons stated herein:

1.  Carson's motion (Doc. 23) for extension of time, leave to exceed page limits, and for clarification/leave regarding exhibits is **granted** to the extent it seeks an extension of time and leave to exceed the page limits in her resistance. It is **denied as moot** as to all other aspects.

2.  Amtrak's various motions to strike (Docs. 19, 20, 21) are **denied**.

3.  Amtrak's motion (Doc. 11) to compel arbitration and stay proceedings is **granted** pursuant to the Texas Arbitration Act. This case is hereby **stayed** pending the resolution of arbitration or further order of the court.

4.  Carson's motion (Doc. 2) for preliminary injunction is **denied without prejudice**.

5.  The parties shall file a joint status report within **14 days** after a final arbitration order is entered.

**IT IS SO ORDERED** this 3rd day of June, 2026.

_____
Leonard T. Strand
United States District Judge

19